**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**ALEXANDRIA DIVISION**

| | | |
|---|---|---|
| UBIQUITY, INC., | ) | |
| *Plaintiff,* | ) ) ) | Civil Action No. 1:22-CV-00353 |
| v. | ) ) | |
| BRIAN KREBS and KREBS ON SECURITY, LLC, | ) ) ) | |
| *Defendants.* | ) | |

## DECLARATION IN SUPPORT OF APPLICATION OF JAY MARSHALL WOLMAN TO QUALIFY AS A FOREIGN ATTORNEY UNDER LOCAL CIVIL RULE 83.1(D)

I, Jay Marshall Wolman, supplement my application to qualify as a foreign attorney as follows:

1.      I am an attorney with the law firm of Randazza Legal Group, counsel for Brian Krebs and Krebs on Security, LLC, in the above-captioned action. I submit this Declaration in support of the Application pursuant to Local Civil Rule 83.1(D) for my *pro hac vice* admission to the bar of this Court.

2.   My full name is Jay Marshall Wolman.

3.   My office address and telephone number are as follows:

> Randazza Legal Group, PLLC
> 100 Pearl Street, 14th Floor
> Hartford, CT 06103
> Telephone: 702-420-2001 ext. 18.

4.      I am admitted to the State Bars of Massachusetts, Connecticut, New York, and the District of Columbia, and a member of the bars of the Supreme Court of the United States, the U.S. Courts of Appeals for the First, Second, Fourth, Fifth, Sixth, Ninth, Tenth, Eleventh, and D.C. Circuits, and the United States District Court for the District of Massachusetts, District

of Connecticut, District of Columbia, and the Northern, Eastern, Western, and Southern Districts of New York, and I am qualified and licensed to practice before the same.

5.     I fully meet the requirements of Local Civil Rule 83.1(D) in that the rules of the United States District Court for the District of Connecticut, the district in which I maintain an office, extends a similar privilege of practicing *pro hac vice* to members of the bar of this Court; and I will be accompanied by a member of the bar of this Court in all appearances before this Court.

6.     The Court's form, however, adds the requirement that I state that "I have not been reprimanded in any court nor has there been any action in any court pertaining to my conduct or fitness as a member of the bar." I have modified that form as I have been reprimanded by a court.

7.     Specifically, a reprimand was issued by the trial court in the matter of *Lafferty v. Jones*, Case No. UWY-CV-18-6046436-S, which is consolidated with the matters of *Sherlach v. Jones*, Case No. UWY-CV-18-6046437-S and *Sherlach v. Jones*, Case No. UWY-CV-18-6046438-S. I was counsel for certain defendants in that matter.

8.     On September 17, 2021, the plaintiffs in that action took the remote deposition of a former employee of one of my clients. I participated and cross-examined the witness at that deposition via Zoom.

9.     During the course of the deposition, I asked the witness to search his smartphone for certain documents I believed might be responsive to the subpoena served on him by the plaintiffs. A dispute over the obligation of the witness to conduct the search was brought to the Court, which ruled, on an apparent issue of first impression in Connecticut, that the witness was not so obligated.

10.     Subsequently, *sua sponte*, on October 7, 2021, the Connecticut trial court issued an order to show cause regarding potential discipline or sanction.

11.     After hearings and briefing, on January 28, 2022, the Connecticut trial court issued its memorandum of decision, a copy of which is attached as **<u>Exhibit 1</u>**.  The decision set forth that the only rules violated were Rules 3.5(4) (engaging in conduct intended to disrupt proceedings) and 4.3 (dealing with unrepresented persons), not any of the others it had previously considered. The Connecticut court thereupon issued me a formal reprimand.

12.     No appeal was taken of this order and all courts and tribunals to which I am admitted to practice were put on notice.

13. Subsequently, the following reciprocal proceedings occurred:

a.     U.S. District Court for the Western District of New York:  *In the Matter of Jay M. Wolman, an Attorney Admitted to Practice Before this Court*, Order of February 10, 2022, imposing a reciprocal reprimand.  No application to set aside the Order filed and no further action was taken.

b.     Supreme Court of the United States:   Letter of February 8, 2022, acknowledging receipt of notice, with admission file for SCOTUS Bar #256008 duly appended, deeming the notice as properly filed with no further action at this time.

c.     U.S. Patent and Trademark Office:   Letter of February 9, 2022, acknowledging receipt of notice and advising that it would be referred to a staff attorney in the Office of Enrollment and Discipline.  A conversation with staff counsel on March 2, 2022, occurred identifying the trademark prosecutions in which I had appeared. No further action has been taken.

d.      U.S. District Court for the District of Nevada: *In re Jay Marshall Wolman (Wynn v. Bloom)*, Case No. 2:18-cv-00609, Notice to the Presiding Judge (Feb. 22, 2022) by the Chief Judge of receipt of the notice, deferring to the pressing judge of the matter (in which I appear pro hac vice), as to whether any disciplinary action should be taken. Order issued March 10, 2022, that no additional disciplinary action is warranted.

e.      Grievance Committee, Tenth Judicial District; Appellate Division: Second Judicial Department, State of New York: Letter sent on February 28, 2022, File No. T-222-22, seeking an affidavit explaining the circumstances of the reprimand with questionnaire. A timely response was provided and no further actions have been taken.

f.      Commonwealth of Massachusetts: BBO File No. C1-22-00272779, Letter of February 8, 2022, from Office of Bar Counsel, Board of Bar Overseers of the Supreme Judicial Court, acknowledging receipt of the notice, advising intent to file the matter with the Clerk of the Supreme Judicial Court of Massachusetts, with such filing to be docketed as a reprimand in another jurisdiction. No objection filed.

g.      Other courts have acknowledged receipt of notice of the Connecticut discipline, but have taken no action.

I declare under penalty of perjury that the foregoing is true and correct. Executed at **Hartford, Connecticut** on this 10th day of May, 2022.

Jay M. Wolman
Randazza Legal Group (CT Juris No. 433791)
100 Pearl Street, 14th Floor
Hartford, CT 06103
Telephone: 978.801.1776
ecf@randazza.com

- 4 -

# **Exhibit 1**

Order Re: Show Cause Hearing

| DOC. NO.: X06-UWY-CV-18-6046436-S | : | SUPERIOR COURT |
| ERICA LAFFERTY | : | JUDICIAL DISTRICT OF WATERBURY |
| v. | : | COMPLEX LITIGATION DOCKET |
| ALEX EMRIC JONES, ET AL. | : | JANUARY 28, 2022 |

| DOC. NO.: X06-UWY-CV-18-6046437-S | : | SUPERIOR COURT |
| WILLIAM SHERLACH | : | JUDICIAL DISTRICT OF WATERBURY |
| v. | : | COMPLEX LITIGATION DOCKET |
| ALEX JONES, ET AL. | : | JANUARY 28, 2022 |

| DOC. NO.: X06-UWY-CV-18-6046438-S | : | SUPERIOR COURT |
| WILLIAM SHERLACH | : | JUDICIAL DISTRICT OF WATERBURY |
| v. | : | COMPLEX LITIGATION DOCKET |
| ALEX EMRIC JONES, ET AL. | : | JANUARY 28, 2022 |

## ORDER RE: SHOW CAUSE HEARING

This matter arises out of an Order to Show Cause issued by the court on October 7, 2021 to address whether Attorney Jay M. Wolman (the respondent) violated certain rules of professional conduct during a deposition on September 17, 2021. Following a hearing on December 15, 2021, where the respondent was present and represented by counsel, and having considered the exhibits, argument, and briefs filed in connection with the hearing, the court finds as follows.

During the direct examination by plaintiffs' counsel, and prior to the respondent's cross-examination, the deponent testified as follows. He had been employed by the defendant Free Speech Systems, LLC (FSS) from 2009 until his sudden termination by the defendant Alex Jones (Jones) in 2013 or 2014.[1] After the Sandy Hook shooting in 2012, he voiced his concerns about claims being made by frequent guest Wolfgang Halbig.[2] He was disturbed that Jones and his writers were not engaged in legitimate journalism with regard to Sandy Hook, and was concerned with the impact on Sandy Hook family members. He described a stressful, upsetting ending to his employment at FSS, and testified regarding his Equal Employment Opportunity Commission (EEOC) complaint alleging antisemitism towards him by Jones and Jones' staff. At the time of the deposition, he was temporarily residing with family in New York, having been displaced from his home in New Orleans by Hurricane Ida earlier in the month.

During the respondent's cross-examination, the deponent explained that he left New Orleans in haste the day before Hurricane Ida, taking only a few articles of clothing, his car, and his phone. His phone had cloud storage but no documents responsive to the subpoena that was served on him by plaintiffs' counsel in connection with the deposition.[3] Shortly into the cross-examination, the respondent asked the deponent to conduct a search of his phone. The entire line of questioning, including the colloquy with plaintiffs' counsel, is as follows:

"Q   Are you able to search your email through that phone?

A   I can.

---

[1] For four years prior to his employment at FSS, he worked directly with Jones, freelancing on video editing projects.

[2] Halbig is a former defendant in this lawsuit.

[3] The cross-examination revealed that he had searched for physical documents responsive to the subpoena while still in New Orleans. Due to frequent moves, he no longer possessed most of his documents, including the EEOC letter, which was lost or misplaced. He had recently replaced his Samsung phone for an iPhone and had changed carriers, and he did not search his phone for documents responsive to the subpoena, as he had never transferred data from his old Samsung phone to his new iPhone. The only document on the cloud accessible by his phone related to the request for production in the subpoena was the subpoena itself.

Q   Can you --

(PLAINTIFFS' COUNSEL):  I'm going to interject here.  I'm going to interject here.  Mr. Jacobson has not been served by you with any sort of formal process requesting production from him.  And I think it would be improper to ask him to, in the middle of the deposition, search his phone for documents where you have not yet asked him for, formally, for any sort of production.

(RESPONDENT):  Your objection is noted.

BY (RESPONDENT):

Q   Would you, Mr. Jacobson, since you have brought your phone to the deposition, kindly search your email or the phrase "Sandy Hook"?

A   Am I legally required to do that?

Q   You're here.  And you're subpoenaed here, and you brought your documents, your entire email account, to the deposition.

(PLAINTIFFS' COUNSEL):  Yeah.  First of all, that is highly improper for you to answer that question in that way, Mr. Wolman.  You know that this witness is under no legal obligation to search his phone at your request.  You know that.  And --

(RESPONDENT):  No, I don't know that.  Do you have a case to cite?

(PLAINTIFFS' COUNSEL):  The ethical response to that question, if you're going to answer it at all, is to instruct him accurately, that he is not legally required to search his phone at your request.

(RESPONDENT):  I disagree.  And I don't need any instructions from you about ethics of all people.

(PLAINTIFFS' COUNSEL):  You do.  And maybe you should consult with Mr. Randazza.

(RESPONDENT):  Thank you.

BY (RESPONDENT):

Q   Are you refusing my request, Mr. Jacobson?

A   I don't have it -- I don't have my own independent legal counsel here to advise me.  So --

Q   Did you have an opportunity to bring a lawyer?

A   I have no money for a lawyer, so no.

Q   Did you ask any lawyer to come with you?

A   I wasn't advised either which way.

Q   Did anybody tell you you couldn't bring a lawyer?

A   Nobody told me one way or the other.

Q   Would you like an opportunity to consult with a lawyer?

A   If that's my option, yes.

Q   All right.  How much time do you need today to consult with a lawyer as to whether or not you have an obligation to search your phone, which you brought with you today?

(PLAINTIFFS' COUNSEL):  You know, Attorney Wolman, that he has no obligation at your request to search his phone.

(RESPONDENT): I don't know that --

(PLAINTIFFS' COUNSEL):  That obligation would only arise if you served him with a formal request under the rules of Connecticut.  So I think for you to continue to suggest to this witness that he might have a legal obligation at this moment to search his phone in response to a request from you is unethical.  And what I would like to do now is get Judge Bellis on the phone right now, so that she can weigh in on your conduct.

(RESPONDENT):  Please."

After the court was contacted by plaintiffs' counsel, the respondent continued to pursue the

line of questioning, as follows:

"(PLAINTIFFS' COUNSEL): I sent a request to Mr. Ferrara (phonetic), Judge Bellis's clerk.  I've copied you, Attorney Wolman.  If you'd like, you can continue with a different line of questioning, or we can wait until Judge Bellis responds.

(RESPONDENT):  Mr. Jacobson, are you refusing my request?

THE DEPONENT: I'm -- again, I don't have legal counsel to advise me how to answer that question.

(RESPONDENT):  I understand.

(PLAINTIFFS' COUNSEL):  He's already indicated that if he has an option to consult counsel, he would like it.  You gave him that option.

(RESPONDENT):  And he has not called counsel.

BY (RESPONDENT):

Q   Would you like to call a lawyer right now?  Mr. Jacobson, are you going to call a lawyer right now?

(PLAINTIFFS' COUNSEL):  Mr. Jacobson, let me inform you that Judge Bellis has been contacted.  She is the presiding judge in this matter.  This issue will be presented to her.  If you'd prefer to wait to decide whether you think counsel is necessary for Judge Bellis to address this issue, you're welcome to wait.

THE DEPONENT: I'll wait for the judge.

(RESPONDENT):  Chris, why are you interrupting my deposition?  I did not interrupt yours.  This is my questioning --

(PLAINTIFFS' COUNSEL):  The reason I'm interrupting you, Jay, is because I believe you're engaged in unethical conduct towards this witness and it needs to stop.  And since you're unwilling to stop it on your own, we're going to get Judge Bellis on the phone.  That's why I've interrupted your questioning.

(RESPONDENT):  It is a given in every deposition, when a witness brings documents to that deposition that all parties present at the deposition get to inspect the documents brought.  He has brought his phone; it contains documents.  I am asking –

(PLAINTIFFS' COUNSEL):  It does not.  It does not.  He has -- he has not brought documents.  He has brought his phone.  What you have done is ask him to search his phone.  And then when he asked you whether he was legally required to do that, you suggested that he was.

(RESPONDENT): Yes. And he's permitted to go get himself a contrary opinion. He has not done so. You are not his lawyer. You have no place advising him.

(PLAINTIFFS' COUNSEL): I am not his lawyer. But it is my obligation to protect somebody who's unrepresented for the unethical conduct of another attorney.

(RESPONDENT): Once more, my conduct is purely within bounds. He had a full and fair opportunity to seek counsel. No, I did not request documents from the witness, not knowing he was not going to abide his obligation to comply with your subpoena in the first instance.

(PLAINTIFFS' COUNSEL): You have no reason to think he hasn't complied. But why don't you ask questions related to this case or not. But --

(RESPONDENT): I am asking questions related to this case.

(PLAINTIFFS' COUNSEL): -- I think it's clear now -- I think it's clear now that a request has been made of Judge Bellis to review this issue and to review your conduct. And Mr. Jacobson has indicated that he is not going to make a determination as to whether to seek counsel until Judge Bellis has weighed in. Do you want to persist --

(RESPONDENT): I am making a record. Are you refusing to produce documents pursuant to the search I have requested?

(PLAINTIFFS' COUNSEL): I object. This is crazy.

THE DEPONENT: I'm going to wait for the judge.

BY (RESPONDENT):

Q   Is that a no, Mr. Jacobson?

A   That's me waiting for the judge.

Q   Are you refusing to produce it right now?

A   I'm neither refusing or not refusing. I'm waiting to hear what the judge has to say.

Q   And what are you doing to seek judicial intervention at this time?

(PLAINTIFFS' COUNSEL): A request has been made. You're on the email. What are you doing?

BY (RESPONDENT):

Q   Are you seeking judicial intervention, Mr. Jacobson?

A   I don't understand the question.

Q   Do you have a lawyer you can call?

A   Not at this time."

The cross-examination continued. The deponent testified that he felt threatened while working at FSS, that loaded guns with laser scopes were left on the desks of employees, that he was physically charged at by Jones, that he was referred to as "the Jewish individual," having been named that by David Duke, former grand wizard of the Ku Klux Klan, while Duke was a guest on the show, and that a picture of his face was photoshopped onto a rabbi approaching the Wailing Wall.

At one point, the deponent indicated that the respondent's questions were making him nervous and that he felt verbally assaulted. Shortly thereafter, the cross-examination was suspended for the status conference with the court, which was conducted on the record. The issue presented to the court was whether the deponent was required to search his personal phone for documents responsive to the request for production in the subpoena, where no request for production or inspection of the phone itself had been served on the deponent. The court was advised that the deponent was unrepresented, had not produced any documents, had inquired at the deposition as to whether he was legally required to search his phone for documents during the deposition, and wanted the court to address the issue before he decided whether to seek counsel. The respondent and plaintiffs' counsel agreed that the deponent had not searched his phone for responsive documents before the deposition, but disagreed as to whether he testified

with certainty that he did not do so because he knew there would be no responsive documents on his phone. The respondent took the position that the deponent opened the phone up for inspection by bringing it to the deposition. The respondent represented to the court that he continued to ask the deponent to search his phone because the deponent himself neither took steps to seek judicial intervention nor sought independent legal counsel during the deposition.

The court noted that no request for production or inspection of the phone was served on the deponent, and indicated that the respondent could engage in motion practice if his position was that the deponent did not comply with the subpoena. The court emphasized the extraordinary nature of the request, stating that it was unusual, not normal, and not appropriate for a witness to search his phone for documents during a deposition "unless (the witness) decided on the spot that he wanted to search his phone." A subsequent review of the deposition transcript, which of course did not exist at the time of the status conference, makes clear that the deponent was in fact unwilling to do so unless required by law.[4]

The cross-examination resumed following the conclusion of the status conference. The respondent continued to ask the deponent to search his phone. The questioning, again including colloquy with plaintiffs' counsel, is as follows:

"BY (RESPONDENT):

Q   Mr. Jacobson, did you speak with anybody during this break?

A   No, sir.

Q   Did you look at any documents during this break?

A   No, I didn't.

Q   All right. Judge Bellis has said that certainly we can engage in motion practice regarding whether or not you sufficiently searched for responsive

---

[4] At the time of the status conference, the court had no knowledge of the nature of the respondent's cross-examination, or it would have immediately acted.

documents prior to the deposition and that she is not going to force you here to search your phone. But she also did not say you could not do so if you had so desired. Are you willing to do so?

(PLAINTIFFS' COUNSEL): She said that it would be inappropriate to ask a witness to do that during a deposition, Attorney Wolman. She said that.

(RESPONDENT): No, but she did not -- no. She said she wasn't going to force the witness to --

(PLAINTIFFS' COUNSEL): That is not true.

(RESPONDENT): She left it up to him to make his own decisions --

(PLAINTIFFS' COUNSEL): She said it is inappropriate to ask a witness to do that --

(RESPONDENT): He has the option -- he has the option to do so. I cannot compel him to do so. He has the option to do so --

(PLAINTIFFS' COUNSEL): I can't believe you continue to mischaracterize Judge Bellis's ruling on the record --

(RESPONDENT): I'm not mischaracterizing a single thing. She left open the possibility that he would do so voluntarily. So I'm asking to see if he would do so voluntarily. If he says no, that's it. If he says yes, great.

THE DEPONENT: I didn't bring a briefcase -- I didn't bring a briefcase of documents. I brought a phone that provided me service that showed me instructions on how to get to this office. I wasn't aware that I was bringing a pile of papers with me. And that's it. I mean, if you're going to say that I deliberately brought a pile of papers with me, which I also find to be, I mean, deceptive, it's -- I just can't -- I mean, I understand nobody here is representing me. But out of my own brain, I find -- you should be embarrassed for yourself, man. Like, honestly, it's a telephone that I used as a map. I did not come in with a big thing of papers with me and you know that.

(RESPONDENT): Move to strike as nonresponsive.

BY (RESPONDENT):

Q   The question is: Are you willing to search? If the answer is no, okay. If the answer is yes, okay.

A   No.

(RESPONDENT): Thank you.

(PLAINTIFFS' COUNSEL): And let me just say, now that Mr. Jacobson has answered no --

(RESPONDENT): No, we don't need to --

(PLAINTIFFS' COUNSEL): -- that I think your conduct --

(RESPONDENT): -- Chris, speechifying is unnecessary here --

(PLAINTIFFS' COUNSEL): I'm going to make my record here. Because --

(RESPONDENT): You know what, there is no record --

(PLAINTIFFS' COUNSEL): -- this is going to be presented to Judge Bellis --

(RESPONDENT): -- this is a deposition --

THE COURT REPORTER: I'm sorry, Counsel. I can't -- I cannot hear both of you at the same time.

(PLAINTIFFS' COUNSEL): I'll wait to make my comments. Go ahead. I'll wait.

(RESPONDENT): This is not speechifying time.

(PLAINTIFFS' COUNSEL): I'll wait, go ahead.

(RESPONDENT): The judge doesn't need any of that. You can brief whatever you want.

(PLAINTIFFS' COUNSEL): Oh, no, no, no. I'm making a record --

(RESPONDENT): Your grandstanding here is not going to get anything to happen here.

(PLAINTIFFS' COUNSEL): Ask your next question.

(RESPONDENT): I will. Thank you."[5]

---

[5] The court recognizes that there is a fair likelihood that the respondent, who asked the deponent if he was "willing" to search his phone after the status conference, misunderstood the court's directive. Therefore, the court finds no

During the continued cross-examination, the deponent also testified that Jones called him "beefcake" for years, that Jones and Jones' friend spread gay pornography on the deponent's computer screen, that Jones physically threw and broke equipment in the office, that he was upset and intimidated by Jones, and that Jones was a bully who threatened and abused people. At one point, the respondent, on the record and in the presence of the deponent, described a portion of his questioning as "designed to elicit (the deponent's) bias, his paranoia, his nontruths…"

Depositions are routinely used by litigants in civil cases to uncover facts and evidence. Unlike trial testimony, deposition testimony, with rare exception, is conducted outside of the courthouse, without the presence of a judge. Nonetheless, counsel do not abandon their professional and ethical responsibilities at the door of a deposition. Depositions proceed under the authority of the rules of the court, and counsel remain officers of the court, accountable to the court at all times. When a deponent objects to or declines to answer a question or refuses the request of counsel to take certain action without consulting with an attorney, the record is made and there is no justification for counsel to continue to repeatedly ask the same question or request of the deponent. This is not complicated.

Just as counsel remain officers of the court, the court has responsibilities as well. Here, the court's obligations are twofold. As always, the court is tasked with the responsibility of overseeing attorney conduct. Additionally, the court has the obligation to supervise the discovery process so as to ensure the integrity of our adversarial system of justice. While Connecticut law recognizes the fundamental importance of full and fair discovery in civil cases, such discovery must be conducted in good faith. That is, while our adversarial system is based on the marshaling of evidence in a competitive manner, improper tactics such as harassing or intimidating witnesses,

---

misconduct with respect to this renewed request. The focus of the misconduct is on the respondent's actions prior to the status conference with the court.

obstructing discovery, and the like, are prohibited. As stated in the Preamble to the Rules of Professional Conduct, "(a) lawyer should use the law's procedures only for legitimate purposes and not to harass or intimidate others." Deposition misconduct is a matter of considerable concern to the court. "Indeed, for matters relating to courtroom conduct, judges have primary jurisdiction over lawyers who do not meet their obligations as officers of the court". *Corona v Day Kimball Healthcare,* Superior Court, Judicial District of Hartford, Complex Litigation Docket, 2018 WL 4955691 (Sept. 20, 2018, Moukawsher, J.)(suspending defense counsel following a show cause hearing for disruptive deposition conduct). See also *Picard v. Guilford House, LLC*, 178 Conn. App. 134(2017)( trial court properly sanctioned counsel for inappropriate conduct at the deposition of a non-party witness; sanctions were not barred by the fact that counsel had been reprimanded as a result of a grievance filed by opposing counsel based on the same misconduct); *Medina v. Statewide Grievance Committee*, Superior Court, Judicial District of Hartford at Hartford, 2017 WL 6803094 (December 1,2017, Robaina, J.)( denying appeal from sanction of reprimand arising out of the service of deposition notices). "(I)t is the lawyers who set the tone. It is they who can continue to keep the profession an honorable and essentially honest one, or who can subject their opponents, their own clients, and ultimately themselves to a series of ill-mannered and costly exchanges… A part of the duty of professionalism is the obligation to prepare one's case properly and to hesitate to undertake action in a case until one is sure that the action is permitted or warranted. *Cejas v. Allstate*, Superior Court, Judicial District of New Haven at New Haven, 2004 WL 2592929 (Oct.12,2004, Pittman,J.)(declining to enter sanctions against the defendant for defense counsel's conduct in connection with scheduling a non-party deposition).

Here, the respondent made the extraordinary request to an unrepresented witness to physically conduct, during the deposition, a search of his personal phone. Plaintiffs' counsel

immediately objected, the deponent responded by asking the respondent whether he was legally obligated to do so, and the respondent answered. The issue here is not whether the deponent was legally obligated to conduct a search of his phone where the subpoena did not include such a request or inspection (he was not obligated to do so). Rather, the court's focus is the respondent's answer to the deponent's inquiry, and the respondent's subsequent questioning and conduct prior to the status conference.

### Rule 4.3. Dealing With Unrepresented Person

Rule 4.3 provides as follows: "In dealing on behalf of a client with a person who is not represented by counsel, in whole or in part, a lawyer shall not state or imply that the lawyer is disinterested. When the lawyer knows or reasonably should know that the unrepresented person misunderstands the lawyer's role in the matter the lawyer shall make reasonable efforts to correct the misunderstanding. The lawyer shall not give legal advice to an unrepresented person, other than the advice to secure counsel, if the lawyer knows or reasonably should know that the interests of such a person are or have a reasonable possibility of being in conflict with the interests of the client." The official commentary explains that "(a)n unrepresented person, particularly one not experienced in dealing with legal matters, might assume that a lawyer is disinterested in loyalties or is a disinterested authority on the law even when the lawyer represents a client". The commentary distinguishes situations involving unrepresented persons whose interests may be adverse to those of the lawyer's client and recognizes that because the possibility that the lawyer will compromise the unrepresented person's interests is so great, the giving of any advice, apart from the advice to obtain counsel, is prohibited. The commentary further notes that "(w)hether a lawyer is giving impermissible advice may depend on the experience and sophistication of the unrepresented person, as well as the setting in which the behavior and comments occur". Thus, the

rules require an attorney to distinguish individuals who are represented by counsel from those who are unrepresented, to identify when an unrepresented person has interests opposed to that of their client, and to conduct themselves accordingly.

The respondent clearly took the position on the record at the deposition that his request that the deponent search his phone was an appropriate request. The respondent answered the deponent's question of whether he was legally required to search his phone, and provided justification by answering "You're here. And you're subpoenaed here, and you brought your documents, your entire email account, to the deposition." This answer was intended to persuade the deponent that the deponent was legally obligated to comply. The court rejects the respondent's argument that his answer was a non-answer, meant nothing, was evasive, was not legal advice, and did not answer the question.[6] The ethical response to the deponent's inquiry was an easy one. The respondent should have clearly and unambiguously told the deponent that he could not give him legal advice.[7] The court finds by clear and convincing evidence that the respondent violated Rule 4.3 by improperly giving legal advice to an unrepresented person, knowing that such person's interest conflicted with that of his client.

## Rule 3.5. Impartiality and Decorum of the Tribunal

Rule 3.5(4) provides that a lawyer shall not "engage in conduct intended to disrupt a tribunal or ancillary proceedings such as depositions and mediations". The officially commentary explains that "(t)he advocate's function is to present evidence and argument so that the cause may

---

[6] Later, the respondent noted that the deponent was permitted to obtain a "contrary" opinion, and the deponent himself indicated that he still wanted to obtain the advice of his own independent legal counsel. Although plaintiffs' counsel also stated his position on the issue on the record, the court finds that these statements by both the deponent and the respondent, taken in context, supports the conclusion that legal advice was given by the respondent.

[7] Alternatively, the respondent could have simply told the deponent that the court would decide the issue, or the respondent could have even ignored the question and moved on to a different line of questioning.

be decided according to law. Refraining from abusive or obstreperous conduct is a corollary of the advocate's right to speak on behalf of litigants".

In the present case, the respondent's conduct prior to the status conference exceeded the permissible parameters of legitimate advocacy and violated Rule 3.5(4). The respondent persisted in pressuring the deponent to search his phone; his questions and comments on the record evidence his efforts to coerce the deponent into believing that he was obligated to comply, as he did not call an attorney or contact the court on his own during the deposition. The respondent interrogated the deponent as to why he did not bring an attorney with him to the deposition, and, significantly, about how much time the deponent needed "today" to consult with an attorney. Immediately after the court was notified, the respondent continued with his requests that the deponent search his phone. He repeatedly, and unreasonably, asked the deponent whether he was going to call a lawyer "right now" and stated on the record that the deponent had had a "full and fair opportunity to seek counsel." This is unacceptable and unfair. It strains credulity to believe that an ordinary, non-party witness, let alone this particular witness who at this point in the deposition had already testified to unusual personal circumstances, had the means or ability to reach an attorney in the middle of a deposition. Over and over again, before the court could intervene, and despite the deponent's clear indications that he wanted to consult an attorney and wait for the court, the respondent barraged the witness by asking him whether he was refusing to comply with his requests to search the phone. Incredibly, the respondent asked this deponent-a layperson-what he himself was doing to seek judicial intervention. Clearly, the only purpose to this line of questioning was to mislead and intimidate the deponent. The court had already been notified by counsel of a deposition dispute—this was not the first time that counsel had sought court intervention mid deposition—and there was no legitimate reason for the respondent to

suggest that the deponent attempt to do so as well. Moreover, it is absurd to even suggest that any deponent, let alone this unrepresented non-party witness from out of state, has the ability to contact the appropriate judge in the middle of a deposition.

The court rejects the respondent's argument that he was making a record with this line of questioning. The record had already been made. The record was clear at the onset of the cross-examination: the deponent was unwilling to comply with the respondent's request, wanted to consult with an attorney, and was awaiting the court's response. The court also rejects the respondent's argument that the deponent was stoic and held his ground despite the questions put to him. The record is clear and the court finds that the defendant felt verbally assaulted by the respondent's questions early on in the cross-examination. Harassing or intimidating a witness is indefensible regardless of the outward effect on the witness.[8] The court finds by clear and convincing evidence that the respondent's repeated questioning regarding his requests to search the cell phone, contacting the court, and contacting an attorney, were not intended to create or perfect the record, but rather was designed with the goal of harassing and pressuring the deponent into searching his phone despite the deponent's stated unwillingness to do so absent court intervention or advice from counsel, so as to deprive the deponent of a reasonable opportunity to consult with an attorney and have the court intervene.

The court is not confronted with an innocent mistake or an excusable misstep but rather intentional bad behavior which gives rise to ethical violations. The court finds, by clear and convincing evidence, that the respondent violated Rule 3.5(4), by purposefully engaging in conduct intended to disrupt the deposition proceedings by harassing, barraging, and pressuring the

---

[8] In fact, and extraordinarily, while not a basis for the court's finding of misconduct, the respondent subsequently stated on the record, in the presence of the deponent, that he was cross-examining the respondent regarding his bias, paranoia, and non-truths—certainly not something normally said in the presence of a deponent during a deposition.

unrepresented deponent with repetitive and unfair questioning, and by attempting to mislead the deponent into believing that he had to comply with his request unless the deponent himself immediately sought judicial intervention or contacted an attorney.

An attorney "as an officer of the court in the administration of justice, is continually accountable to it for the manner in which he exercises the privilege which has been accorded him. His admission is upon the implied condition that his continued enjoyment of the right conferred is dependent upon his remaining a fit and safe person to exercise it, so that when he, by misconduct in any capacity, discloses that he has become or is an unfit or unsafe person to be entrusted with the responsibilities and obligations of an attorney, his right to continue in the enjoyment of his professional privilege may and ought to be declared forfeited." *In re Peck,* 88 Conn. 447, 450, 91 A.2d 274 (1914). An attorney must conduct himself or herself in a manner that comports with the proper functioning of the judicial system." (Internal quotation marks omitted.) *Notopoulos v. Statewide Grievance Committee,* 277 Conn. 218, 232, 890 A.2d 509, cert. denied, 549 U.S. 823, 127 S.Ct. 157, 166 L.Ed.2d 39 (2006).

"If a court disciplines an attorney, it does so not to mete out punishment to an offender, but [so] that the administration of justice may be safeguarded and the courts and the public protected from the misconduct or unfitness of those who are licensed to perform the important functions of the legal profession." (Internal quotation marks omitted.) *Statewide Grievance Committee v. Shluger,* 230 Conn. 668, 674-75 (1994).

Connecticut courts have utilized the American Bar Association's Standards for Imposing Lawyer Sanctions as a guide for assessing appropriate discipline, and the Connecticut Supreme Court has approved this approach. *Burton v. Mottolese, supra,* 267 Conn. 55. The standards provide that the court, after a finding of misconduct, should consider "(1) the nature of the duty

violated; (2) the attorney's mental state; (3) the potential or actual injury stemming from the attorney's misconduct; and (4) the existence of aggravating or mitigating factors." A.B.A., Standards for Imposing Lawyer Sanctions (1986) Standard 3.0; Listed as aggravating factors are "(a) prior disciplinary offenses; (b) dishonest or selfish motive; (c) a pattern of misconduct; (d) multiple offenses; (e) bad faith obstruction of the disciplinary proceeding by intentionally failing to comply with rules or orders of the disciplinary agency; (f) submission of false evidence, false statements, or other deceptive practices during the disciplinary process; (g) refusal to acknowledge wrongful nature of conduct; (h) vulnerability of victim; (i) substantial experience in the practice of law; (j) indifference to making restitution and (k) illegal conduct, including the involving the use of controlled substances." A.B.A., Standards for Imposing Lawyer Sanctions (1986) Standard 9.22.

Listed as mitigating factors are "(a) absence of a prior disciplinary record; (b) absence of a dishonest or selfish motive; (c) personal or emotional problems; (d) timely good faith effort to make restitution or to rectify consequences of misconduct; (e) full and free disclosure to disciplinary board or cooperative attitude toward proceedings; (f) inexperience in the practice of law; (g) character or reputation; (h) physical disability; (i) mental disability or chemical dependency including alcoholism or drug abuse when: (1) there is medical evidence that the respondent is affected by a chemical dependency or mental disability; (2) the chemical dependency or mental disability caused the misconduct; (3) the respondent's recovery from the chemical dependency or mental disability is demonstrated by a meaningful and sustained period of successful rehabilitation; and (4) the recovery arrested the misconduct and recurrence of that misconduct is unlikely; (j) delay in disciplinary proceedings; (k) imposition of other penalties or

sanctions; (l) remorse; [and] (m) remoteness of prior offenses." A.B.A., Standards for Imposing Lawyer Sanctions (1986) Standard 9.32.

Having previously found misconduct on the part of the respondent, and after articulating the basis today, the court the court now assesses the appropriate discipline. The duties implicated, to the public and to the legal system, are important ones. The court agrees with Disciplinary Counsel in that the oppressive questioning, and intimidating conduct subverts proper legal procedures, has a chilling effect on the participation of witnesses, and is antithetical to the proper administration of justice. With respect to the respondent's mental state, the court has found that the respondent acted knowingly and intentionally. With respect to actual or potential injury, the court has no doubt that the deponent was mistreated and that this deposition conduct has a potential chilling effect on other witnesses in this case, such that there is both actual and potential injury here.

Turning to mitigating factors, the respondent has a clean disciplinary record not only since his Connecticut admission in 2012, but from his first admission to other jurisdictions in 2001. The court places great consideration on the fact that the respondent has been in practice for over twenty years and has no disciplinary history. The court has also taken into consideration the respondent's cooperation through this process, and that he has expressed some remorse by virtue of his affidavit filed in connection with his brief, indicating that his language might appear aggressive and apologizing for any discomfort or pressure the deponent might have felt. The court has not credited as a mitigating factor the respondent's good reputation or character (but neither has the court considered as an aggravating factor any pattern of misconduct): On May 6, 2021, the court, having already referred prior defense counsel to the disciplinary authorities, and concerned about obstructive and dilatory practices as well as candor towards the court on the part of the defense

19

including the respondent, instructed all counsel in the case to review the relevant sections of the Rules of Professional Conduct. Then, on May 29, 2021, the court warned the respondent to refrain from invoking the Rules in civil filings in this lawsuit, as it is entirely inappropriate to use the Rules as a weapon in a civil lawsuit. The court warned the respondent that any further such usage of the Rules would result in immediate action by the court pursuant to Practice Book Section 2-45. Thereafter, on June 26, 2021, the court warned the respondent to refrain from inappropriate commentary and ad hominem criticism of the court in his filings, based on his recent court filings. While these were all very rare steps for the court to take, the court was shortly thereafter confronted with the respondent's conduct at the September 17, 2021 deposition.[9]

With respect to aggravating factors, the court has taken into consideration the deponent's vulnerability. Which the court has addressed through this decision. Additionally, the court has also considered that the deponent has not fully expressed remorse for his actions giving rise to the misconduct, despite a partial apology for how the deponent might have felt or how his conduct might have been perceived.

The respondent's intentional conduct during his cross examination of the deponent prior to the status conference exceeded the bounds of acceptable attorney behavior and was solely attributable to the respondent. This conduct violated the respondent's professional obligations under rules 3.5(4) and 4.1, harmed the integrity of the process, and left unchecked, would have a chilling effect on future deposition or trial testimony. Attorneys cannot intimidate or bully witnesses, even hostile witnesses, in any case, let alone in a hotly contested and contentious case

---

[9] In addition to these unusual warnings from the court, the case itself has a unique history, including threats made by Jones to plaintiffs' counsel, reported threats made against the court by individuals on the defendant Infowars, LLC. website, discovery materials produced by the Jones defendants which contained images of child pornography, the Jones' defendants' violation of the court's confidentiality order with regard to a plaintiff's deposition, and the Jones defendants' failure to comply with court orders regarding discovery which resulted in a default against them. It is important, in light of this history, that all witnesses in this case can testify without being threatened or intimidated.

such as this, regardless of whether or not a witness shows any outward response to the improper tactics. While there is room for persistent, competitive, and even aggressive lawyering in our courts, there is simply no room for conduct where witnesses are mistreated and which violate our rules of professional conduct.

The court hereby issues a reprimand.

**421277**

**BELLIS,J.**